Richard **BARANOWSKI** and **B.E.S. Environmental Specialists, Inc.**

v.

The **ENVIRONMENTAL PROTECTION AGENCY** and **Lee M. Thomas,** Administrator, Environmental Protection Agency and **Harvey G. Pippen, Jr.,** Director, EPA Grants Administration Division and **John C. Martin,** EPA Inspector General and **P. Ronald Gandolfo,** EPA Divisional Inspector General for Audit.

**Civ. A. No. 88–8359.**

United States District Court,
E.D. Pennsylvania.

Nov. 23, 1988.

Gregory T. Magarity, Wolf, Block, Schorr and Solis Cohen, Philadelphia, Pa., by Nancy Ezold, for plaintiffs.

Catherine L. Votaw, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

## FINDINGS OF FACT

1. Plaintiff B.E.S. Environmental Specialists, Inc. ("BES") is a large contractor under the Superfund program.

2. Plaintiff Richard Baranowski is an officer of BES.

3. On September 30, 1988, EPA issued a subpoena to BES, seeking the production of cost records in connection with an audit of specified contracts between BES and EPA, and of all delivery orders awarded to BES under a contract between EPA and another EPA clean-up contractor. The subpoena was issued because plaintiffs had been stonewalling EPA's audit efforts. The Assistant U.S. Attorney recommended enforcement proceedings.

4. Plaintiff BES did not comply with this subpoena.

5. On September 29, 1988, EPA had issued Notices of Proposed Disbarment to BES and Baranowski. These Notices suspended plaintiffs from further contracting with EPA, and gave plaintiffs 30 days to submit information against the proposed debarment.

6. Plaintiffs did not exercise their right to submit materials opposing the proposed debarment.

7. On October 31, 1988, plaintiffs filed this suit, with a motion for preliminary injunction in which they asked the Court to enjoin defendants from (1) conducting audits contemplated by the subpoena, (2) continuing the suspension and (3) continuing the debarment process.

8. In April, 1987, a federal grand jury indicted BES and Baranowski on seven counts of making false claims and false statements against the United States, in connection with BES's contract to clean up a Superfund site in Berks County, Pennsylvania called the Brown's Battery Breaking site. After a non-jury trial, the district court acquitted BES and Baranowski of all the criminal charges.

9. The subpoena decision was made by Deputy Inspector General Anna Virbick, upon the request of Divisional Inspector General for Audits P. Ronald Gandolfo, with the background memorandum of James Clark, an attorney with EPA's Office of General Counsel, Inspector General Division. The agent in the criminal case, Martin Squitieri, now Divisional Inspector General for Investigations, did not partic-

ipate in the decision to issue the September 30, 1988 subpoena to BES.

10. The documents listed in the September 30, 1988 subpoena are necessary for the proper conduct of an audit.

11. The scope of the subpoena is reasonable in light of the agency's purpose to protect the taxpayers' investment in the Superfund program. The subpoena seeks documents which are relevant to this purpose.

12. Although some burden is necessarily imposed by complying with the subpoena, the subpoena at issue is not unduly broad or burdensome. EPA also eased any burden by permitting production at BES's offices instead of EPA's offices, and by seeking to audit only completed contracts.

13. The burden on the contractor must be evaluated in view of the fact that BES entered into the contracts which permit the agency access to the records in question.

14. EPA's Office of Inspector General issued the September 30, 1988 subpoena for several reasons. First, the criminal charges and transcript of the criminal trial revealed problems of concern to EPA. Second, BES is a large and important EPA contractor under the Superfund program. Third, BES had refused to comply with its contractual obligation to produce records.

15. The subpoena was not the product of individual or institutional vindictiveness or retaliation.

16. The prior audits were not in depth, and did not take into account the record of the criminal trial.

17. There is a reasonable basis for the agency to allege "special circumstances, such as indications of fraud" in light of the criminal transcript and exhibits as described at the hearing. Whether the administrative record will support any such finding is another matter, which must await development of a full record at an administrative hearing.

18. BES has not received final payment on the Brown's Battery contract. BES has a contractual obligation to produce the records starting three years following final payment on the contract.

19. The Director of the Grants Administration Division (the "Director") is EPA's debarring official. The Director is the only EPA official who has the authority to debar or suspend a contractor or to issue a notice proposing a debarment or suspension.

20. The Director initiates a debarment proceeding by sending a notice of proposed debarment to the respondent.

21. EPA afforded BES an opportunity for a hearing.

22. Based on the hearing and the entire administrative record, the debarring official makes a decision. This decision must be made within 30 days after the hearing or receipt of the respondent's written information unless the debarring official extends this period for good cause.

23. A notice of proposed debarment precludes the issuing agency from awarding contracts to the respondent pending resolution of the debarment proceeding. The notices contain a statement to this effect.

24. The agency debarring official and hearing officer serve as neutral fact-finders. They have their own independent legal advisor. They act independently of the views and interests of advocates of debarment in the agency.

25. On July 17, 1987, the Director issued Notices of Suspension to BES and Baranowski based on the April 14, 1987 indictment.

26. On October 13, 1987 the acquittal removed the sole basis for the suspension and it was terminated.

27. Early in 1988, Martin Squitieri, an EPA special agent in Investigations who had worked on the criminal investigation of BES and Baranowski, gave James Clark, of the Inspector General Division of the Office of the General Counsel, the transcript of the criminal trial and the trial exhibits. He also informed Mr. Clark about evidence that Mr. Baranowski had given gratuities to Thomas Massey, EPA's on-scene coordinator at the Brown's Battery site. Agent

Squitieri asked Mr. Clark to study the case to determine whether some civil or administrative action would be warranted against BES or Baranowski. Mr. Clark had not participated in either the fraud or the gratuities investigations.

28. In 1988, Mr. Clark and Agent Squitieri met with Mr. Meunier, the Chief of EPA's Debarment Compliance Section, Mr. Feldman, a contracts lawyer in EPA's Office of General Counsel, and others. The persons at the meeting believed: a) in light of the evidence of various forms of misconduct on the part of Mr. Baranowski and BES, the firm did not appear to be the kind of firm that EPA wanted implementing the Superfund program; b) because BES had been acquitted, debarring the firm would be difficult; c) Mr. Clark should draft a memorandum in support of proposed debarment of BES and Baranowski; and d) the approval of the Superfund program and the Procurement and Contracts Management Division should be obtained before asking the Director to initiate any debarment action.

29. After the meeting, Mr. Clark drafted a memorandum of information ("MOI") in support of proposed debarment. The MOI alleged that BES had made fraudulent claims against EPA on the Brown's Battery job, that Mr. Baranowski had given gratuities to an EPA employee, and that BES had refused to give EPA auditors access to audit papers available under the audit access clauses of BES's contracts and subcontracts.

30. After completion of the MOI, Mr. Clark met with Mr. Meunier, Mr. Feldman, and others. Those present agreed that EPA should seek to debar BES and Baranowski.

31. After obtaining the necessary concurrences, Mr. Clark, Mr. O'Connor, and Mr. Meunier signed off the MOI and sent it to EPA's debarring official, Harvey Pippen, for his consideration.

32. On September 29, 1988, Director Harvey Pippen made an independent judgment to issue EPA's notices proposing to debar plaintiffs from receiving both federal procurement contracts and EPA assisted contracts, and attaching the MOI. The notice of proposed debarment stated that if the charges in the MOI were true, then cause for debarment existed. It provided that in accordance with 48 CFR § 9.406–3 of the Federal Acquisition Regulations (the "FAR"), EPA would not award any contracts to BES or Baranowski pending resolution of debarment notices. It also notified plaintiffs that they had thirty days in which to ask for a hearing. Mr. Clark played no role in drafting the notices of proposed debarment.

33. BES and Baranowski have not exercised their right to submit information and argument or to request an administrative hearing.

34. There are no exceptional circumstances that would justify bypassing the administrative process in this manner.

35. EPA's administrative procedures satisfy the requirements of the regulations and due process.

36. Mr. Clark, the agency attorney in this matter, played the lead role in preparing the Memorandum of Information in Support of Proposed Debarment of BES and Richard Baranowski, which was essentially the debarment complaint.

37. Mr. Pippen based his decision to issue the notices of proposed debarment to plaintiffs entirely on the Memorandum of Information in Support of Proposed Debarment of BES and Richard Baranowski.

38. The agency's notices of proposed debarment with attached MOI gave plaintiffs adequate notice of the allegations and of their procedural rights.

39. Defendants did not deny plaintiffs any information to which they are entitled.

40. EPA bears a lesser burden of proof in a debarment than the beyond a reasonable doubt standard of proof required in a criminal case.

41. Plaintiffs have not shown a probability of success on their claim to stop the debarment process. The MOI presents evidence of several instances of alleged misconduct which, if true, would be cause for debarment. Defrauding the government,

giving government employees gratuities to influence their official actions, and refusing to give government auditors access to records, if proven in the administrative hearing, are each probably causes for debarment. The audit proceedings were separately pursued by the agency and were not a ruse to set up the debarment proceedings.

██ 42. The MOI alleges that plaintiff Baranowski conspired with John Del Vecchio to boost Del Vecchio's price for supplying clay to the Brown's Battery site and to pass that fraudulently increased price on to EPA. That allegation is based on the immunized trial testimony of John Del Vecchio, testimony of other witnesses, and documentary evidence. The testimony of witnesses at the criminal trial and the trial exhibits may have probative value even though the prosecution had failed to prove plaintiffs guilty beyond a reasonable doubt.

43. BES allegedly submitted payment requests to EPA representing that it owned equipment that was actually rented and charged EPA the rate appropriate for owned equipment. Examples of these payment requests are attached to EPA's MOI.

44. EPA has some evidence (e.g., charge card records and the corporate ledger) showing that Baranowski took Mr. Massey, EPA's on-scene coordinator at the Brown's Battery site, on a Canadian vacation. Baranowski allegedly bricked in Massey's carport. There is a dispute as to whether Massey paid for the brick wall. There may be a dispute about the allegedly paid vacation.

45. The credit card records and hotel receipts are not "matters occurring before the grand jury" because they are independently created business records the disclosure of which neither compromises grand jury secrecy nor reveals the grand jury's scope or direction. Even if the credit card and hotel records and the other evidence derived from grand jury subpoenas were "matters occurring before the grand jury," the administrative proceedings are based largely on other issues, stopping the debarment would be a disproportionate sanction and the charge card records could be ob-

tained by an administrative subpoena. Moreover, it is premature to determine whether any future debarment will even rest on any matters derived from grand jury subpoenas. The subpoena and debarment actions are based on other evidence having no relation to "matters occurring before the grand jury." The fraud charges are based on the criminal trial transcript and exhibits. The gratuity charges are based on hotel receipts, the employee's time card, the investigation in Canada, the BES general ledger which was a trial exhibit and the statements of the persons who did the brick work. The plaintiffs' failure to provide information requested during audit had nothing to do with any grand jury investigation.

██ 46. EPA has been seeking access to records from various projects that BES has performed for EPA since March 25, 1988. BES's refusal to give agency auditors the access to these records which their contracts require could constitute a violation of the terms of a Government contract. 48 CFR § 9.406–2(b)(1); 40 CFR § 32.200(c).

██ 47. Plaintiffs have not shown that EPA or any of its employees are engaged in an improper campaign to harass plaintiffs. EPA's subpoena and debarment actions are motivated by concern for the agency's legitimate business interests, not by any personal or institutional vendetta. EPA's debarring official is a neutral fact finder insulated from any bias on the part of other EPA employees.

48. Plaintiffs have not shown sufficient irreparable harm between now and the time their debarment case can be resolved administratively to justify the relief they seek.

49. Plaintiffs are not foreclosed from completing their multi-million dollar existing contracts with EPA nor from bidding additional contracts in the hope that BES will be eligible to receive contracts when the awards occur. The suspension incident to the debarment proceedings does not foreclose plaintiffs from dealing with Government agencies besides EPA.

50. Granting a preliminary injunction would harm the agency's orderly conduct of its business and the public interest in the responsible conduct of the agency's affairs.

CONCLUSIONS OF LAW

1. EPA has met its burden of establishing

(1) that the subpoena is within the agency's statutory authority and has a legitimate purpose.

(2) that the information sought is relevant to EPA's inquiry and necessary.

(3) that the demand is not unreasonably burdensome or broad and agency procedures have been followed.

The subpoena was not issued for an improper purpose, such as harassment, nor would its enforcement constitute an abuse of the Court's process.

2. EPA has shown that the subpoena is within the agency's statutory authority.

3. The subpoena seeks relevant information, and is not unduly broad or burdensome.

4. Defendants did not issue the subpoena for an improper purpose.

5. The subpoena should be enforced.

6. The Court lacks subject matter jurisdiction to intervene in an ongoing debarment process, absent exceptional circumstances.

7. Plaintiffs have failed to prove a reasonable probability of success on the merits of their claim that such exceptional circumstances exist.

8. Plaintiffs have failed to exhaust their administrative remedies. The administrative proceeding is not yet final.

9. Plaintiffs have not shown a probability of prevailing on their claim that EPA has denied them due process.

10. Plaintiffs have not shown a probability of success on their claims that the suspension was not adequately founded.

11. Plaintiffs have not shown that EPA's debarment activities were improperly motivated.

12. Plaintiffs have not shown sufficient irreparable harm if the preliminary injunction is denied to justify the relief sought.

13. The equities favor denying the requested injunctive relief. No exceptional circumstances exist to justify disruption of the administrative processes.

ORDER

AND NOW, this 23rd day of November, 1988, after a hearing, plaintiff's motion for preliminary injunction is DENIED and defendants' motion to enforce the September 30, 1988 subpoena is GRANTED. Plaintiffs shall furnish EPA with the documents specified in the September 30, 1988 subpoena within 15 days or later date as the Inspector General shall establish.